# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KRISTEN GIOVANNI, et al.,<br><br>    *Plaintiffs,*<br><br>    v.<br><br>UNITED STATES DEPARTMENT OF THE NAVY,<br><br>    *Defendant.* | CIVIL ACTION<br>NO. 16-04873 |
| DOROTHY PALMER, et al.,<br><br>    *Plaintiffs,*<br><br>    v.<br><br>UNITED STATES DEPARTMENT OF THE NAVY,<br><br>    *Defendant.* | CIVIL ACTION<br>NO. 17-00765 |

**PAPPERT, J.**                                                                        **January 15, 2020**

## MEMORANDUM

The Giovanni and Palmer families live near facilities that were owned and operated by the United States Navy. After discovering that chemicals from the facilities infiltrated their water supply, they sued the Navy under Pennsylvania's Hazardous Sites Cleanup Act. The Navy filed a Motion to Dismiss, arguing that the Court lacks jurisdiction because the Navy has not waived sovereign immunity. In the alternative, the Navy argues that Plaintiffs' Consolidated Amended Complaint fails to state a claim because neither perfluorooctane sulfonate ("PFOS") nor perfluorooctanoic acid ("PFOA")—the two perfluorochemical compounds ("PFCs") found in the water—are "hazardous substances" under HSCA.

The Third Circuit Court of Appeals already ruled in this case that the Navy waived sovereign immunity under the Resource Conservation and Recovery Act, foreclosing the Navy's continuing argument to the contrary. The Navy is correct, however, that the PFCs are not hazardous substances under HSCA. After studying the parties' briefing (ECF Nos. 43, 45 and 47) and holding oral argument (ECF No. 53), the Court grants the Navy's Motion on that ground.

I

A

The Giovanni and Palmer families discovered that their private wells contained dangerous levels of PFCs. (Consol. Am. Compl. ¶¶ 28, 36, ECF No. 41.[1]) They later learned that the Navy had improperly disposed of PFOA and PFOS at its Willow Grove and Warminster facilities, which allowed the substances to infiltrate the groundwater supply of both public and private drinking wells. (*Id*. ¶¶ 22, 26, 34.) The Navy provided the families with bottled water for six months, after which the families used their local townships' water supplies. (*Id*. ¶¶ 32, 40.) Despite being connected to the townships' supplies, the families were still exposed to PFCs. (*Id.* ¶¶ 42, 46.) As a result of the contamination, Plaintiffs filed suit in 2016 in state court under HSCA,[2] seeking costs for medical monitoring and an order requiring the Navy to perform a health assessment and health effects study of residents affected by the contamination. (*Id*. ¶ 2.)

---

[1]  Because these cases have been consolidated, all ECF citations without a case number refer to docket entries in *Giovanni v. U.S. Dep't of Navy*, No. 16-4873.

[2]  The Giovannis filed their lawsuit in the Montgomery County Court of Common Pleas while the Palmers filed their action in the Bucks County Court of Common Pleas.

B

The Navy removed the cases to federal court. (Notice of Removal, ECF No. 1-1, No. 16-4873; Notice of Removal, ECF No. 1, No. 17-765.) In 2017, the Court dismissed the claims, holding that it lacked jurisdiction because the requested remedies were "challenge[s]" to a "removal or remedial action" under the Comprehensive Environmental Response, Compensation and Liability Act. *See* (Mem. Op., ECF No. 22, No. 16-4873; Order, ECF No. 16, No. 17-765).

The Third Circuit affirmed in part and vacated and remanded in part. *Giovanni v. U.S. Dep't of Navy*, 906 F.3d 94 (3d Cir. 2018). The court of appeals affirmed the dismissal of Plaintiffs' claim for a government-led health assessment and health effects study because that claim constituted a "challenge" to ongoing response efforts under § 113(h) of CERCLA and was therefore barred from federal court review. *Giovanni*, 906 F.3d at 102.

The Circuit vacated the dismissal of the private medical monitoring claim. *Id.* The court first reviewed that claim under CERCLA, holding that although medical monitoring was not a "challenge" to the ongoing cleanup effort, the Navy did not waive sovereign immunity under § 120(a)(1) of CERCLA because the Willow Grove and Warminster facilities were included on the National Priorities List. *Id.* at 118 n.26 (citing *Warminster Twp. Mun. Auth. v. United States*, 903 F. Supp. 847, 850 (E.D. Pa. 1995) ("[T]he waiver of sovereign immunity described in CERCLA cannot operate to expose the Government to liability under the HSCA [for facilities on the NPL].")). The Third Circuit concluded, however, that the Navy waived immunity under RCRA. *Id.* at 121.

After the Third Circuit issued its decision, the Navy sought a rehearing *en banc* but the court of appeals denied the request. Order Denying Petition for Rehearing *en Banc*, *Giovanni*, 906 F.3d 94 (No. 17-2473). This Court then consolidated the cases (ECF No. 38) and Plaintiffs filed a Consolidated Amended Complaint. (ECF No. 41.) The Consolidated Amended Complaint asserts one claim under HSCA and requests as a remedy the costs of medical monitoring.³ (Consol. Am. Compl. ¶¶ 66–85.)

II

A

Where a pleading does not allege facts sufficient to establish subject matter jurisdiction, a party can move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1). Challenges to subject matter jurisdiction may be facial or factual in form. *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000). The assertion of sovereign immunity as a defense is properly treated as a facial challenge. *See Urella v. Pa. State Troopers Ass'n*, 2008 WL 1944069, at *3 (E.D. Pa. May 2, 2008). With facial challenges, the Court treats the complaint's allegations as true and decisions on any motions are purely legal determinations. *Cudjoe v. Dep't of Veterans Affairs*, 426 F.3d 241, 244 (3d Cir. 2005). In reviewing a facial attack under Rule 12(b)(1), the Court's inquiry is limited to the allegations in the complaint, the documents referenced in or

---

³ Plaintiffs' Consolidated Amended Complaint also seeks an order requiring the Navy to perform a health assessment and health effects study. (Consol. Am. Compl. ¶¶ 2, 85.) The Navy correctly argues that the Third Circuit Court of Appeals already considered and rejected this form of relief. (Def.'s Mot. to Dismiss ("Def.'s Mot.") 9, ECF No. 43.) Again, the Circuit held that the request for a government-led health assessment and health effects study was barred under § 113(h) of CERCLA as a challenge to ongoing response actions. *Giovanni*, 906 F.3d at 115. The Court is bound by that holding. Plaintiffs, apparently recognizing that the Third Circuit resolved the health assessment/effects claim, did not respond to the Navy's argument on this point. *See generally* (Plaintiffs' Resp. Opp'n to Motion to Dismiss ("Pls.' Resp."), ECF No. 45). The Court accordingly focuses only on the medical monitoring claim.

4

attached to the complaint, and matters in the public record. *In re Intel Corp. Microprocessor Antitrust Litig.,* 452 F. Supp. 2d 555, 557 (D. Del. 2006).

B

To survive dismissal under Federal Rule of Civil Procedure 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the facts pled "allow[ ] the court to draw the reasonable inference that [a] defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

When the complaint includes well-pleaded factual allegations, the Court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679). However, this "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (quoting *Connelly*, 809 F.3d at 786–87).

III

The United States enjoys immunity from suit absent an explicit waiver of sovereign immunity. *United States v. Mitchell*, 445 U.S. 535, 538 (1980). "Sovereign immunity is jurisdictional in nature," *FDIC v. Meyer*, 510 U.S. 471, 475 (1994), and extends to governmental agencies of the United States, including the Navy. *See Antol v. Perry*, 82 F.3d 1291, 1296 (3d Cir. 1996). The government's consent to be sued cannot be implied; it must be "unequivocally expressed" and waivers of sovereign immunity must be "strictly construed" in favor of the government. *United States v. Idaho ex rel. Dep't of Water Resources*, 508 U.S. 1, 6–7 (1993) (citations omitted).

The Navy asserts a sovereign immunity defense under RCRA, *see* (Def.'s Mot. to Dismiss ("Def.'s Mot.") 11–18, ECF No. 43), and Plaintiffs respond that the Third Circuit already held that the Navy waived its immunity. (Pls.' Resp. Opp'n Mot. to Dismiss ("Pls.' Resp.") 5, ECF No. 45.) The Navy, however, claims that the court of appeals did not actually decide whether a claim for medical monitoring "satisfies all the textual elements of RCRA's [immunity] waiver" and asks the Court to conclude that the Navy maintains sovereign immunity. *See* (Def.'s Mot. 11–16). The Third Circuit's unequivocal holding to the contrary forecloses that request.

RCRA is a comprehensive environmental statute governing the treatment, storage and disposal of hazardous waste. *Meghrig v. KFC Western, Inc.*, 516 U.S. 479, 483 (1996). Its primary purpose "is to reduce the generation of hazardous waste and to ensure the proper treatment, storage, and disposal of that waste." *Id.* Under RCRA, each department of the federal government dealing with hazardous waste "shall be subject to, and comply with, all Federal, State, interstate, and local requirements, both

substantive and procedural . . . respecting control and abatement of solid waste or hazardous waste disposal and management." 42 U.S.C. § 6961(a). The statute "expressly waives any immunity otherwise applicable to the United States with respect to any substantive or procedural requirement (including, but not limited to, any injunctive relief, administrative order or civil or administrative penalty or fine . . .)." *Id*.

One issue before the Third Circuit was whether the Navy had waived its sovereign immunity pursuant to § 6001(a) of RCRA. *Giovanni*, 906 F.3d at 118. The court reviewed the language of RCRA's waiver, noting that although it is "wordy," "the upshot is that the United States has surrendered its immunity with respect to the enforcement of federal, state, and local environmental laws due to contamination at the hands of the government, when such enforcement involves injunctive relief." *Id*. (citing 42 U.S.C. § 6961(a)). The court explained that a claim for medical monitoring under HSCA is a claim for injunctive relief,[4] and "[b]ecause RCRA waives sovereign immunity to claims for injunctive relief, the Navy is not immune from suit for the costs of private party medical monitoring." *Id*. at 121. The Third Circuit's decision on this point was a major holding in the case.

The Navy now argues that the Court should reconsider that holding because the Third Circuit purportedly failed to discuss whether medical monitoring is a "requirement . . . respecting control and abatement of solid waste or hazardous waste

---

[4] The Navy also seems to ask the Court to reconsider the Third Circuit's decision that medical monitoring is a form of injunctive relief under RCRA. *See* (Def.'s Mot. 17). The Navy argues that a medical monitoring fund is "most akin to monetary relief that RCRA does not authorize," and that no court of appeals other than the Third Circuit has waived immunity under RCRA for medical monitoring costs. (*Id*.) That may well be, but this Court sits in the Third Circuit and adheres to its precedent.

7

disposal and management." *See* (Def.'s Mot. 13 (quoting 42 U.S.C. § 6961(a))). The Court will not do so. In our judicial system, "[i]t is axiomatic that on remand for further proceedings after [a] decision by an appellate court, the trial court must proceed in accordance with the mandate and the law of the case as established on appeal." *Bankers Trust Co. v. Bethlehem Steel Corp.*, 761 F.2d 943, 949 (3d Cir. 1985). The Third Circuit's sovereign immunity holding was clear and the Court will follow it on remand.

In any event, the parties' appellate briefs and the oral argument transcript contravene the Navy's claim that the Third Circuit overlooked any aspect of the RCRA sovereign immunity waiver. The "control and abatement" issue was flagged for the Circuit in the Navy's Joint Response Brief and the Giovannis' Reply Brief. *See* Joint Response Brief at 43–45, *Giovanni*, 906 F.3d 94 (Nos. 17-2473, 17-3196); Reply Brief at 13–16, *Giovanni*, 906 F.3d 94 (No. 17-2473). Specifically, the Reply Brief cites several district court cases involving RCRA immunity waivers and quotes the relevant language of RCRA, including the "respecting control and abatement of solid waste or hazardous waste disposal" phrase. Reply Brief at 14–15, *Giovanni*, 906 F.3d 94. At oral argument, Judge Bibas asked whether medical monitoring was "about control or abatement of hazardous waste disposal." *See* (Apr. 26, 2018 Oral Argument Tr. 14:9–15:21, *Giovanni*, 906 F.3d 94). In response, Plaintiffs' counsel stated that under the Pennsylvania Supreme Court's construction of HSCA, medical monitoring falls within the scope of hazardous waste control. (*Id.* at 15:7–21.)

Finally, even if the RCRA immunity issue had not been raised in the appellate briefing or at oral argument, *see* (Def.'s Mot. 12), that would not affect this Court's

8

decision. Because "sovereign immunity is jurisdictional in nature," *Meyer*, 510 U.S. at 475, the Third Circuit had an independent duty to satisfy itself that subject matter jurisdiction existed. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006) (explaining that courts have an "independent obligation to determine whether subject-matter jurisdiction exists" because it goes to the court's power to hear the case). The Court is confident that the Third Circuit exercised that duty.[5]

IV

A

Alternatively, the Navy contends that Plaintiffs fail to state a claim under HSCA because the statute requires the release of a "hazardous substance" and neither PFOS nor PFOA are designated as such. *See* (Def.'s Mot. 23–25).

A private citizen who has been injured as a result of the release of a hazardous substance may file a civil action under § 1115 of HSCA. 35 P.S. § 6020.1115(a). The Pennsylvania Supreme Court made clear in *Redland Soccer Club, Inc. v. Department of the Army* that § 1115 "is the *only* section of HSCA that authorizes citizen suits, and thus, it is the *only* section under which the [plaintiffs] could have brought suit." 696 A.2d 137, 147 (Pa. 1997) (emphasis added). In *Redland Soccer*, plaintiffs were exposed to hazardous substances and filed a lawsuit seeking relief in the form of a medical monitoring trust fund. *Id*. at 142. The plaintiffs filed their lawsuit under §§ 702 and 1115 of HSCA, but the court explained that while § 702 specified categories of relief for which a defendant could be liable, the plaintiffs could not bring their suit under that

---

[5] Because the Navy waived sovereign immunity under RCRA, the Court need not decide whether the Navy also waived sovereign immunity under § 702 of the Administrative Procedure Act. *See* (Consol. Am. Compl. ¶ 9).

9

section. *Id.* at 147. Here, the Giovannis and Palmers filed citizen suits, *see* (Jan. 9, 2020 Hr'g Tr. 30:6–9, ECF No. 54), so they must bring their claims under § 1115.

Section 1115 requires the presence of a hazardous substance. 35 P.S. § 6020.1115(a). The form of relief that Plaintiffs seek—the costs of medical monitoring—also requires them to allege, among other things, that the injury resulted from a "proven hazardous substance."[6] *Redland Soccer*, 696 A.2d at 145–46. HSCA defines "hazardous substance" as any material that is:

(1) "[d]esignated as a hazardous waste under . . . the Solid Waste Management Act, and the regulations promulgated thereto";

(2) "[d]efined or designated as a hazardous substance pursuant to the Federal Superfund Act [otherwise known as CERCLA]";

(3) "[c]ontaminated with a hazardous substance to the degree that its release or threatened release poses a substantial threat to the public health and safety or the environment as determined by the department"; or

(4) "[d]etermined to be substantially harmful to public health and safety or the environment based on a standardized and uniformly applied department testing procedure and listed in regulations proposed by the department and promulgated by the Environmental Quality Board."

35 P.S. § 6020.103(1).

The Navy argues that PFOS and PFOA are not considered hazardous substances within any of these four subsections. (Def.'s Mot. 24–25.) Plaintiffs, however, focus on the first subsection and argue only that the PFCs are hazardous wastes under the Solid

---

[6] There are seven elements necessary to establish a *prima facie* claim for medical monitoring under HSCA: "(1) exposure to greater than normal background levels; (2) to a proven hazardous substance; (3) caused by the defendant's negligence; (4) as a proximate result of the exposure, plaintiff has a significantly increased risk of contracting a serious latent disease; (5) a monitoring procedure exists that makes the early detection of the disease possible; (6) the prescribed monitoring regime is different from that normally recommended in the absence of the exposure; and (7) the prescribed monitoring regime is reasonably necessary according to contemporary scientific principles." *Redland Soccer,* 696 A.2d at 145–46.

10

Waste Management Act.[7] *See* (Jan. 9, 2020 Hr'g Tr. 28:3–29:13). Based on Plaintiffs' interpretation of that subsection, a material can be designated as a hazardous waste in one of two ways: by either "be[ing] on a list or . . . meet[ing] the characteristics of the definition of hazardous [waste]" under the SWMA. *See* (*id.* at 17:14–16). According to Plaintiffs, because the term "hazardous waste" is defined in HSCA and because the PFCs fit within that definition, PFOS and PFOA are designated as hazardous wastes.[8] (*Id.* at 19:12–16.) Put plainly, Plaintiffs ask the Court to interpret the terms "defined" and "designated" to mean the same thing. *See* (*id.* at 19:20–24; 22:21–23). The Court declines to do so.

Beginning with the text of HSCA, PFOS and PFOA must be "designated as a hazardous waste" under the SWMA and its regulations. 35 P.S. § 6020.103(1)(i). The very next subsection, however, allows a material to be either "[d]efined *or* designated as a hazardous substance" under CERCLA. *Id.* § 6020.103(1)(ii) (emphasis added). When determining a statute's meaning, the starting point is "the ordinary meaning of the

---

[7] At oral argument, Plaintiffs' counsel correctly acknowledged that the PFCs do not fall within HSCA's latter three definitions of "hazardous substance." *See* (Jan. 9, 2020 Hr'g Tr. 28:3–29:13). First, PFCs are not hazardous substances pursuant to CERCLA's definition of the term, 12 U.S.C. § 9601(14), nor are PFOS or PFOA included in CERCLA's list of hazardous substances appearing at 40 C.F.R. § 302.4. *See* 35 P.S. § 6020.1115(a)(2). Neither have the PFCs been "contaminated with a hazardous substance" as required by the third definition. *Id.* § 6020.1115(a)(3). And finally, the Environmental Quality Board has not promulgated any regulations listing PFOS or PFOA as hazardous substances. *Id.* § 6020.1115(a)(4).

[8] HSCA defines "hazardous waste" as "any waste defined as hazardous under the . . . [SWMA], and any regulations promulgated under that act." 35 P.S. § 6020.103. The SWMA, in turn, defines hazardous waste as:
> any garbage, refuse . . . and other discarded material including solid, liquid, semisolid, or contained gaseous material . . . which because of its quantity, concentration, or physical, chemical, or infectious characteristics may: (1) cause or significantly contribute to an increase in mortality or an increase in morbidity in either an individual or the total population; or (2) pose a substantial present or potential hazard to human health or the environment when improperly treated, stored, transported, disposed of, or otherwise managed.

35 P.S. § 6018.103.

11

words used." *Appalachian States Low-Level Radioactive Waste Comm'n v. Pena*, 126 F.3d 193, 197–98 (3d Cir. 1997). To "designate" means "to indicate and set apart for a specific purpose, office or duty" or to "specify, stipulate," while to "define" means "to determine or identify the essential qualities or meaning of."[9] The plain and ordinary meaning of two terms demonstrates that the word "designate" does not subsume the term "define."

Moreover, when different words are used in the same sentence of a statute—as is the case here—courts should construe the text in a way that gives each word "independent meaning." *Babbitt v. Sweet Home Chapter of Communities for a Great Oregon*, 515 U.S. 687, 702 (1995). Indeed, courts should avoid a reading "which renders some words altogether redundant." *Gustafson v. Alloyd Co., Inc.*, 513 U.S. 561, 574–75 (1995); *see also* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 176–77 (2012). The Court presumes that the Pennsylvania General Assembly did not include both terms—"designated" and "defined"—for the purpose of making one word a duplicate of the other.

Since "designated" and "defined" have independent meanings, the absence of the term "defined" from the SWMA subsection dooms Plaintiffs' argument. When one section of a statute contains a particular provision, the "omission of the same provision from a similar section is significant to show" a difference in meaning between the two sections. 2A N. Singer, *Sutherland on Statutory Construction* § 46.07 (6th ed. 2000). HSCA's omission of the word "defined" from the SWMA subsection narrows the scope of

---

[9] *Designate*, Merriam-Webster, https://www.merriam-webster.com/dictionary/designate (last accessed Dec. 20, 2019); *Define*, Merriam-Webster, https://www.merriam-webster.com/dictionary/defined (last accessed Dec. 20, 2019).

that provision; merely having the essential qualities of a hazardous waste under SWMA's statutory definition is not enough to be a hazardous substance under HSCA.[10]

In designating hazardous wastes under the SWMA, the Pennsylvania Code has largely incorporated by reference the Code of Federal Regulations. 25 Pa. Code § 261a.1 (incorporating 40 C.F.R. Part 261). Thus, a material is designated as a "hazardous waste" under the SWMA if one of the following is met: (1) it exhibits one or more characteristics of a hazardous waste, 40 C.F.R. § 261.3(a)(2)(i); or (2) it is a listed hazardous waste, *id*. § 261.3(a)(2)(ii).

There are four characteristics of hazardous waste. *Id*. § 261.20–.24. They include: (1) ignitability, (2) corrosivity, (3) reactivity and (4) toxicity. *Id*. Plaintiffs do not allege that PFOS and PFOA are ignitable, corrosive or reactive. As for toxicity, the regulation requires that the material "contain[] any of the contaminants listed in table 1." *Id*. § 261.24. Table 1, however, does not list PFOS or PFOA. *Id*.

Even if a material does not have any of the four characteristics of hazardous waste, it can still be classified as such if listed as a hazardous waste. 40 C.F.R. § 261.3(a)(2)(ii). PFOS and PFOA, however, are not listed as hazardous wastes under 40 C.F.R. § 261.30–.35.

---

[10] Plaintiffs ask the Court to rely on *Tennessee River Keeper, Inc. v. 3M Company*, 234 F. Supp. 3d 1153 (N.D. Ala. 2017), to find that PFOS and PFOA need only fit within SWMA's statutory definition of hazardous waste. (Jan. 9, 2020 Hr'g Tr. 26:12–27:24.) The *Tennessee River* plaintiffs did not bring their suit under HSCA; rather, they filed a citizen suit under § 7002(a)(1)(B) of RCRA, which requires the presence of a "hazardous waste which may present an imminent and substantial endangerment to health or environment." 42 U.S.C. § 6972(a)(1)(B); *Tennessee River*, 234 F. Supp. 3d at 1155, 1159–60. Thus, the *Tennessee River* plaintiffs only had to allege that PFOS and PFOA fell within RCRA's statutory definition of hazardous waste, not the more specific "designated as a hazardous waste" language in HSCA. *See Tennessee River*, 234 F. Supp. 3d at 1159–60.

B

Plaintiffs argue in the alternative that they have an implied right of action for the costs of medical monitoring under §§ 507 and 1101 of HSCA. (Pls.' Resp. 17–20.) Again, however, § 1115 is the only statutory provision pursuant to which private citizens can seek relief, *see Redland Soccer*, 696 A.2d at 147; *supra* Section IV.A, and counsel conceded at oral argument that there is no precedent for a citizen suit medical monitoring claim under any other section. (Jan. 9, 2020 Hr'g Tr. 34:19–24.)

Section 507(a) states, in relevant part, that a person who "causes a public nuisance under [HSCA] or causes a release or a substantial threat of release of a contaminant . . . shall be liable for the response costs and for damages to natural resources."[11] 35 P.S. § 6020.507(a). Under § 507, only "the department, a Commonwealth agency, or a municipality which undertakes to abate a public nuisance. . . may recover those response costs." *Id*. Section 1101 provides that the release of a hazardous substance under HSCA constitutes a public nuisance, and that "[a]ny person allowing such a release or committing such a violation shall be liable for the response costs caused by the release or the violation." *Id*. § 6020.1101. To Plaintiffs, "logic compels the conclusion" that an implied private right of action exists under these sections to recover response costs for the release of "contaminants" that create a "public

---

[11] HSCA defines "contaminant" as "[a]n element, substance, compound or mixture which is defined as a pollutant or contaminant pursuant to the Federal Superfund Act." 35 P.S. § 6020.103. The Federal Superfund Act, otherwise known as CERCLA, defines "pollutant or contaminant" as including, but not limited to, "any element, substance, compound, or mixture, including disease-causing agents, which after release into the environment and upon exposure, ingestion, inhalation, or assimilation into any organism . . . will or may reasonably be anticipated to cause death, disease, behavioral abnormalities, cancer, genetic mutation, [or] physiological malfunctions." 42 U.S.C. § 9601(33).

nuisance," thereby circumventing the "hazardous substance" requirement. *See* (Pls.' Resp. 18–19 (citing *Smith v. Weaver*, 665 A.2d 1215, 1220 (Pa. Super. Ct. 1995)).[12]

*Redland Soccer* forecloses Plaintiffs' argument,[13] as does their requested remedy; Plaintiffs' effort to work around the hazardous substance requirement fails because they seek the costs of medical monitoring. Again, of the seven elements required to state such a claim under HSCA, one requires alleging exposure to a "proven hazardous substance." *Redland Soccer*, 696 A.2d at 145; *see supra* note 6. Both § 1115 and the *prima facie* elements of a medical monitoring claim require a hazardous substance—not a contaminant and not a public nuisance.

C

Lastly, Plaintiffs contend that if all else fails, the Court should deny the Navy's Motion to Dismiss because the state and federal governments are "well on their way to classifying PFAS as hazardous substances." (Pls.' Resp. 21.) According to Plaintiffs, the "imminent classification of [PFCs] as hazardous substances" would "give rise to a[n] [express] private right action under HSCA § 702." (*Id.*)

---

[12] In further support of this argument, Plaintiffs rely on two cases where plaintiffs asserted a HSCA claim for response costs under § 507 and § 1101: *In re Joshua Hill, Inc.*, 294 F.3d 482, 490 (3d Cir. 2002), and *Fiorentino v. Cabot Oil & Gas Corp.*, 750 F. Supp. 2d 506, 511 (M.D. Pa. 2010). In *Joshua Hill*, a real property owner brought an action under HSCA for response costs and declaratory relief. 294 F.3d 482. The court noted without explanation that the plaintiffs "sought response costs under sections 6020.702(a)(3) and 6020.507(a) of the Act." *Id.* at 490. The material in *Joshua Hill*, however, was a "hazardous substance" and thus does not support Plaintiffs' contaminant–medical monitoring theory. *See id.* at 485 (listing the relevant hazardous substances).
    *Fiorentino* does not help the Plaintiffs either. There, property owners brought suit under HSCA in connection with the defendants' operation of natural gas wells. *Id.* at 508. The court held that the plaintiffs had sufficiently pleaded a claim under § 702 for response cost provisions rather than under § 1115. *Id.* at 511. But just like *Joshua Hill*, *Fiorentino* only involved discussion of hazardous substances—not contaminants. Moreover, one of the claims in *Fiorentino* was a common-law medical monitoring claim, which required a "proven hazardous substance." *Id.* at 513.

[13] *See supra* Section IV.A.

15

The inherent vagaries of the legislative or regulatory processes aside, the issue is not whether someone in Harrisburg or Washington may someday mold the law to Plaintiffs' current theory. The issue is whether the Plaintiffs can state a claim for relief under the current law; indeed, it is the Court's duty to decide cases based on what the law is, not what the law may be at some point in the future.

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.